**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

XEZAKIA ROUSE,
Plaintiff,

v. No. CV 11-0433 MV/CG

SGT. TOBY L. BACA,
OTHER UNNAMED SGT.,
Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Plaintiff Zezakia Rouse's amended *Civil Rights Complaint Pursuant to 42 U.S.C. § 1983*, (Doc. 5), *Defendant Sgt Toby L Baca's Martinez Report*, (Doc. 43), *Plaintiff's Response to Defendant's Martinez Report*, (Doc. 58), and *Defendants'* [sic] *reply to Plaintiff's Response to Defendant's Martinez Report*, (Doc. 60). Defendant contends that Plaintiff's complaint must be dismissed because, among other reasons, he failed to exhaust all available administrative remedies prior to filing suit. (Doc. 43 at 2, Doc. 60 at 1). The Court, having considered the parties' filings, the relevant law, and otherwise being fully advised in the premises, **RECOMMENDS** that Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**I.      Background**

The events giving rise to this suit occurred while Plaintiff was incarcerated at the Central New Mexico Correctional Facility ("CNCMF"). On May 4, 2011, correctional officers were conducting "shakedowns" of prison cells due to recent discoveries of contraband and handmade weapons. (Doc. 5 at 2; Doc. 43-2 at 3, 8). Prisoners were directed to step out of their cells and to stand with their backs against the wall next to their cell doors. (Doc. 43-

2 at 3, 7-8). Plaintiff maintains that he complied with these orders but that he also turned his head so that he could look into his cell while it was being searched. (Doc. 5 at 2; Doc. 43-2 at 3). An unnamed Sergeant, later identified in the *Martinez* report as Sgt. Emmitt Bland, directed Plaintiff to stop looking into his cell while it was being searched. (Doc. 5 at 2; Doc. 43-2 at 3). Plaintiff replied that he had a right to watch the search of his cell. (*Id.*). Sergeant Toby Baca approached Plaintiff and asked him what his problem was and why he was arguing with Sgt. Bland. (*Id.*). Plaintiff insisted that it was within his right to watch the cell search. (*Id.*). Sgt. Baca then ordered Plaintiff back into his cell. (*Id.*). While in the cell, Sgt. Baca became very aggressive and ordered Plaintiff to turn around and face the back wall. (Doc. 5 at 2-3; Doc. 43-2 at 3). Once Plaintiff turned around, Sgt. Baca supposedly punched him in the back of the head and pushed him. (Doc. 5 at 3; Doc. 43-2 at 3). Plaintiff turned and tried to defend himself but Sgt. Baca continued to punch him in the face repeatedly. (*Id.*). Another officer then jumped on Plaintiff's back and took him to the ground. (*Id.*). Plaintiff claims that Sgt. Baca then delivered an upper-cut to his left eye while he was being restrained on the ground. (*Id.*).

As a result of the assault, Plaintiff claims that he suffered bruises, a punctured lip, a black eye, blurred vision, and a broken left eye socket. (Doc. 5 at 3). He was then put in the more restrictive "level six" confinement and he lost multiple privileges even though he was never found guilty of violating any disciplinary rules. (Doc. 5 at 4; Doc. 58 at 3). He continues to suffer from migraines, blurred vision and psychological trauma. (Doc. 5 at 3).

Within hours of the purported assault, Plaintiff made a statement to Lieutenant Abner Hernandez wherein he accused Sgt. Baca of using excessive force during the cell search. (Doc. 43-2 at 14). Lt. Hernandez investigated Plaintiff's claims. He interviewed Plaintiff, Sgt.

Baca, Sgt. Bland, Officer Kellie Harris, Officer Duane Chavez, Officer Raymond De La Cruz, and Officer Gabaldon, all of whom were involved in the cell search and resulting incident. (*Id.* at 16-33). Following the investigation Lt. Hernandez prepared a "Serious Incident Form" and he recommended that further investigation was warranted. (Doc. 43-2 at 33).

The matter was referred to the Special Investigation/Internal Affairs division ("SIIA") and investigator Marla Perez began investigating the incident on May 11, 2011. (*Id.* at 12). Ms. Perez re-interviewed Plaintiff and the relevant corrections officers and she took statements from all of them. (*Id.* at 3-9). Several of the officers stated that Mr. Rouse became aggressive towards Sgt. Baca during the cell search and that he pushed Sgt. Baca in the chest without provocation. (*Id.* at 5-8). Officer Chavez and Sgt. Baca then took Mr. Rouse down to the ground and several officers suggest that he must have sustained his injuries while being taken down. All of the officers deny beating Mr. Rouse and assert that, with the exception of Rouse's aggressive push, no punches were thrown. (*Id.* at 4-9). Ms. Perez ultimately concluded that there was "insufficient information to clearly prove or disprove [Plaintiff's] allegation." (*Id.* at 10).

**II.    Standard of Review**

In the Court's Order directing submission of a *Martinez* Report, the parties were advised, pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), that the verified complaint and *Martinez* report could be treated as affidavits and used in deciding whether to grant summary judgment. (Doc. 28 at 2). Considering that the Defendant has not filed any dispositive motions since submitting the *Martinez* report, the Court finds it appropriate

to construe the report as a motion for summary judgment.[1]

Summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c)(2). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this burden is met, the party opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

The Court liberally construes Plaintiff's filings because he is a *pro se* plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nevertheless, a *pro se* non-moving party must still "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hospital,* 221 F.3d 1160, 1164 (10th Cir. 2000).

**III.     Analysis**

Defendant Baca, in both his *Answer* and in the *Martinez* report, asserts that Plaintiff's complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). (Doc. 27 at 5; Doc. 43 at 2). The PLRA mandates that "no action shall be brought with respect

---

[1] In Defendant's *Martinez* report, he states that "Defendant's Motion to Dismiss is Made Separately" but to this date he has not filed a motion to dismiss or any other dispositive motions. (Doc. 43 at 6).

to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is to first provide prison officials with an opportunity to respond to an inmate's complaint and to ensure that an administrative record is created that facilitates judicial review. *Whitington v. Ortiz*, 472 F.3d 804, 807 (10th Cir. 2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002)). The PLRA's exhaustion requirement is mandatory in every instance as Congress has eliminated a court's discretion to look beyond a prisoner's failure to exhaust his or her administrative remedies. *Porter v. Nussle*, 534 U.S. 516 (2002). The Supreme Court has interpreted the PLRA to require exhaustion even where the available remedies would appear incapable of providing the relief sought. *Booth v. Churner*, 532 U.S. 731, 738-41 (2001) (holding that the PLRA required exhaustion even where prisoner's complaint sought only monetary relief and the grievance process did not permit award of monetary damages). In order to exhaust all available administrative remedies a prisoner must do more than simply initiate the grievance process; he must complete it prior to filing suit. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

CNMCF had a four-step grievance procedure in effect on May 4, 2011. (*See* Doc. 43-19 at 1). A prisoner first had to file an "Inmate Informal Complaint" with his unit manager within five days of the incident giving rise to the grievance. (Doc. 43-20 at 9). If the informal complaint failed to resolve the issue within five days, the inmate then had the right to file an 'Inmate Grievance Form" with a designated Grievance Officer. (*Id.*). The Grievance Officer was required to prepare a recommended disposition for the Warden within 20 days of receipt of the grievance. (*Id.* at 11). The Warden then had 15 days within which to

5

approve, disapprove, or modify the recommendation. (*Id.* at 11-12). If the inmate was not satisfied with the Warden's decision, he had a right to appeal to the Office of the Secretary of Corrections within seven days. (*Id.* at 12). A Grievance Administrator in the Secretary's office would then investigate the matter and prepare a recommendation for the Secretary or his designated representative. (*Id.* at 12-13).

Defendant contends that Plaintiff did not file any grievances with regard to the purported assault. In support, he has attached the affidavit of Ralph Causus, who is the Grievance Appeals Coordinator for the Corrections Department and the custodian of all inmate grievances and appeals. (Doc. 43-23 at 1). Mr. Causus states that Plaintiff filed one grievance with regard to the May 4 cell search and the grievance only alleged that some of his personal property was misplaced or stolen when he was moved from his cell and placed in segregation. (Doc. 43-23 at 2-3). In the grievance Plaintiff stated that he believed the property was taken in retaliation for his assault allegations against Sgt. Baca. (*Id.* at 3). The grievance was denied because Plaintiff failed to first file an informal grievance. (*Id.* at 4-5). Plaintiff did not appeal the denial of his grievance to the Secretary of Corrections and therefor did not complete the grievance process. (*Id.* at 2).

Plaintiff does not dispute that he did not make use of the four-step grievance process to complain about Sgt. Baca's excessive use of force. Rather, he claims that he exhausted his administrative remedies by filing a complaint with Lt. Hernandez and then participating in the SIIA investigation. (Doc. 58 at 1). In support of this position, he directs the Court to a memorandum sent by Richard Henderson, the "Investigation Captain" at CNMCF. (*Id.*). The memorandum, date May 5, 2011, informed Mr. Rouse that his sworn statement alleging excessive use of force by Sgt. Baca would either initiate or be used in

the course of the SIIA investigation. (Doc. 43-3 at 34). Plaintiff also notes that, during every interview conducted by Ms. Perez, she informed the interviewee that "SIIA received a referral regarding a formal complaint filed by inmate Xezakia Rouse." (Doc. 42-3 at 3-7).

The Court finds that Plaintiff's participation in the SIIA investigation did not suffice to exhaust his available administrative remedies. First, there is no indication that the SIIA investigation constituted an "administrative remedy" as contemplated by the PLRA. The investigation was focused on whether Sgt. Baca had committed misconduct and Ms. Perez's letter to Sgt. Baca noted that "this investigation may result in disciplinary action being taken against you." (Doc. 43-2 at 12). There is no indication that the SIIA investigation was focused on or authorized to provide Plaintiff with any kind of compensatory relief. *See, e.g., Pavey v. Conley*, 2011 WL 5924408, at * 4 (7th Cir. Nov. 22, 2011) ("Section 1997e(a) is concerned with the "remedies" that have been made available to prisoners. An internal-affairs investigation may lead to disciplinary proceedings targeting the wayward employee but ordinarily does not offer a remedy to the prisoner who was on the receiving end of the employee's malfeasance.") (citing *Panaro v. City of N. Las Vegas*, 432 F.3d 949, 953 (9th Cir. 2005)). Moreover, even if the internal affairs investigation did provide an avenue for obtaining relief, it was not the sole administrative remedy available to him. The Corrections Department had established a four-step process for resolving prison grievances and Plaintiff failed to avail himself of that process. Notwithstanding Plaintiff's belief initiating the SIIA investigation sufficed to exhaust all administrative remedies, the PLRA "says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him." *Gonzales-Liranza v. Naranjo*, 76 F. App'x 270, 273 (10th Cir. 2003) (quoting *Chelette v.*

7

*Harris*, 299 F.3d 684, 688 (8th Cir. 2003)). When administrative procedures are clearly established, as they were at CNMCF in May of 2011, an inmate must comply with them in order to comply with the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 95 (2006); *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010).

While the Tenth Circuit has not explicitly addressed Plaintiff's argument that participation in an internal-affairs investigation will suffice to exhaust available administrative remedies, all other federal circuits to address the issue have squarely rejected this claim. *See, e.g.*, *Pavey*, 2011 WL 5924408 at * 4-5; *Panaro*, 432 F.3d 953; *Thomas v. Wollum*, 337 F.3d 720, 734 (6th Cir. 2003), *abrogated on other grounds by Woodford,* 548 U.S. at 87. As noted by the Seventh Circuit,

> [E]ven if the internal-affairs investigation *could* result in some relief for the prisoner, the Supreme Court has rejected any suggestion that prisoners are permitted to pick and choose how to present their concerns to prison officials. The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. If a prisoner can be required to submit his grievances in a particular manner and within the precise period of time designated by the prison's administrative procedures, then he must also be required to present his grievance in the proper forum.

*Pavey*, 2011 Wl 5924408 at *5 (internal quotations and citations omitted). The Court finds these opinions to be persuasive in that they are consistent with the Tenth Circuit's ruling that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules - rules that are defined not by the PLRA, but by the prison grievance process itself." *Thomas*, 609 F.3d at 1118 (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

**IT IS THEREFORE RECOMMENDED** that Plaintiff's *Civil Rights Complaint Pursuant*

to 42 U.S.C. § 1983, (Doc. 5) be **DISMISSED WITHOUT PREJUDICE**. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (dismissals for failure to exhaust must be without prejudice).

**IT IS FURTHER RECOMMENDED** that Plaintiff's *Motion to Review Redacted Portion of Martinez Report*, (Doc. 51), *Motion to Provide Names of Other Additional Defendant*, (Doc. 52), *Motion to Add Witness Statement*, (Doc. 54), *Motion for Sanctions*, (Doc. 55), *Motion to Amend Complaint*, (Doc. 56), and *Motion to Amend Plaintiff's Document # 58*, (Doc. 59), be **DENIED AS MOOT**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

*/s/ Carmen E. Garza*
_____
HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE